

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-360-CV

MIKE BISMAR, M.D.                                                APPELLANT

V.

DOROTHY A. MOREHEAD,                              APPELLEES
VAUGHN R. MOREHEAD, AND
JAMES P. MOREHEAD, III,
INDIVIDUALLY AND AS HEIRS
AT LAW OF GLORIA MOREHEAD,
DECEASED

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1] ON REMAND

------------

In this interlocutory appeal, appellant Mike Bismar, M.D., complains of the trial court's denial of his motion to dismiss with prejudice the health care liability claims of appellees Dorothy A. Morehead, Vaughn R. Morehead, and

---

[1] *...* *See* Tex. R. App. P. 47.4.

James P. Morehead, III, individually and as heirs at law of Gloria Morehead, Deceased. We originally dismissed the appeal for want of jurisdiction based on our decision in *Jain v. Stafford*[2] in which we held that an order denying a motion to dismiss based on the alleged inadequacy of an expert report is not appealable by interlocutory appeal.[3] In *Lewis v. Funderburk*,[4] however, the Texas Supreme Court held that appellate courts have jurisdiction to review such orders by interlocutory appeal.[5] Following *Funderburk*, the Texas Supreme Court reversed our order dismissing this appeal and instructed us that we do have jurisdiction.[6] We now consider the appeal of this case on the merits. We affirm.

---

[2] ... 214 S.W.3d 94, 97 (Tex. App.—Fort Worth 2006, pet. dism'd).

[3] ... *See Bismar v. Morehead*, No. 02-07-00360-CV, 2007 WL 4233521, at *1 (Tex. App.—Fort Worth Nov. 29, 2007) (mem. op.), *rev'd*, 262 S.W.3d 805 (Tex. 2008).

[4] ... 253 S.W.3d 204 (Tex. 2008).

[5] ... *Id.* at 205–07 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2009) (allowing for dismissal with prejudice and reasonable attorney's fees and costs awarded to defendant if "expert report has not been served" by claimant within period specified by statute)).

[6] ... *Bismar v. Morehead*, 262 S.W.3d 805, 806 (Tex. 2008).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On or about September 9, 2004, Gloria Morehead was admitted to Kindred Hospital Tarrant County–Fort Worth Southwest (the Hospital) to recover from surgery.  After her admission to the Hospital, Gloria fell and injured her arm.  The injury left her arm severely bruised and swollen from internal bleeding, which ultimately led to her death from hypovolemic shock.  Appellant Dr. Mike Bismar was one of three physicians who treated Gloria after her fall.

On September 8, 2006, the Moreheads filed health care liability claims against the Hospital, Dr. Bismar, and two other treating physicians, seeking survival and wrongful death damages individually and as heirs of Gloria's estate.  The suit was predicated upon the alleged negligent failure of Dr. Bismar and the other defendants to timely and properly diagnose and treat Gloria for the bleeding in her left arm.

In January 2007, the Moreheads served Dr. Bismar with the report of Dr. Charles E. Oswalt.  Dr. Bismar objected to the report and moved to dismiss on the grounds that the report was conclusory as to his negligence and causation of Gloria's death, failed to specifically describe how his treatment breached the standard of care, and improperly attributed a collective standard of care and breach to all of Gloria's treating physicians without addressing Dr. Bismar

3

individually. On May 10, 2007, the trial court granted a thirty-day extension to allow the Moreheads to supplement the report pursuant to section 74.351(c).[7] In May 2007, the Moreheads served Dr. Oswalt's supplemental report.

Dr. Bismar objected to the supplemental report and moved to dismiss on the grounds that Dr. Oswalt again addressed Dr. Bismar and the other defendants collectively and failed to provide specific information regarding the standard of care, breach, and causation attributable to Dr. Bismar. The trial court overruled Dr. Bismar's objections and denied his motion to dismiss. Dr. Bismar then brought this appeal.

## II.    SUFFICIENCY OF DR. OSWALT'S EXPERT REPORT

In his sole issue on appeal, Dr. Bismar contends that Dr. Oswalt's narrative report of the applicable standards of care, breach, and causation is legally insufficient under section 74.351 of the Texas Civil Practice and Remedies Code.

---

[7] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (Vernon Supp. 2009) ("If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension . . . .").

A.    Standard of Review

We review a trial court's determination of a motion to dismiss under section 74.351 for an abuse of discretion.[8] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[9] An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances.[10] However, a trial court has no discretion in determining what the law is or in applying the law to the facts, and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."[11]

---

[8]... *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006) (applying abuse of discretion standard to former Texas Revised Civil Statute article 4590i, § 13.01 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351)); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877–78 (Tex. 2001) (same); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied) (applying abuse of discretion standard to Tex. Civ. Prac. & Rem. Code Ann. § 74.351).

[9]... *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[10]... *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

[11]... *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

5

B.    Texas Civil Practice and Remedies Code Section 74.351

Section 74.351 provides that, within 120 days of filing suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted.[12]  An expert report is a written report by an expert that provides a fair summary of the expert's opinions regarding the applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standard, and the causal relationship between that failure and the injury, harm, or damages claimed.[13]  If a claimant timely furnishes an expert report, a defendant may file a motion challenging the report's adequacy.[14]  A trial court may grant a motion to dismiss based on the alleged inadequacy of an expert report only if it finds, after a hearing, "that the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute.[15]

To constitute an objective good faith effort to comply with the expert report requirements, the report must include the expert's opinions on each of the elements identified in the statute—standard of care, breach, and

---

[12] Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2009).

[13] *Id*. § 74.351(r)(6) (Vernon Supp. 2009).

[14] *See id*. § 74.351(a), (c), (*l*) (Vernon Supp. 2009).

[15] *Id*. § 74.351(*l*).

causation.[16] In detailing these elements, the Texas Supreme Court has made clear that an expert report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit.[17] To fulfill these purposes, the information in the report need not meet the same requirements as evidence offered in a summary judgment proceeding or at trial.[18] Nor is it necessary that the report need marshal all the plaintiff's proof.[19] A report, however, that merely states the expert's conclusions, or omits any of the statutory requirements is insufficient.[20] In assessing the report's sufficiency, the trial court may not draw any inferences from outside the report.[21] Rather, the court must rely exclusively on the information contained within the report's four corners.[22]

---

[16] ... *Palacios*, 46 S.W.3d at 878–79; *Thomas v. Alford*, 230 S.W.3d 853, 856 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[17] ... *Palacios*, 46 S.W.3d at 879; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

[18] ... *Palacios*, 46 S.W.3d at 878–79; *Thomas*, 230 S.W.3d at 856.

[19] ... *Palacios*, 46 S.W.3d at 878–79; *Thomas*, 230 S.W.3d at 856.

[20] ... *Palacios*, 46 S.W.3d at 879.

[21] ... *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Palacios*, 46 S.W.3d at 878.

[22] ... *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878.

C.    Standard of Care, Breach, and Causation

Dr. Bismar contends that Dr. Oswalt's report is conclusory and speculative in its assertion of the standard of care, breach, and causation because it 1) asserts collective standards as to Gloria's death without differentiating between Dr. Bismar and the other treating physicians; 2) incorrectly states that Dr. Bismar "took no measures to treat Gloria [] for hypovolemic shock until she was 'found to be unresponsive' in the afternoon of September 22, 2004," when, in fact, Dr. Bismar ordered a transfusion after examining her arm; and 3) contains no reference to the timing of Dr. Bismar's treatment of Gloria.

Statements concerning the standard of care and breach must identify what care was expected, and the care that was not given, with such specificity that inferences need not be indulged to discern them.[23] The same standard of care may apply to more than one defendant only if they owe the same duty to the patient.[24] In addition, an expert report must not be conclusory in its

---

[23] ... *Benish v. Grottie*, 281 S.W.3d 184, 198 (Tex. App.—Fort Worth 2009, pet. denied); *Thomas*, 230 S.W.3d at 858.

[24] ... *Compare Barber v. Dean*, — S.W.3d. —, No. 02-07-353-CV, 2009 WL 3490952, at *10 (Tex. App.—Fort Worth Oct. 29, 2009, no pet. h.) ("The report is not insufficient for 'grouping' [a]ppellees together because Dr. Wagner specifically states that they all owed the same duty to ensure the proper positioning and padding of Malcolm's arm."), *and In re Stacy K. Boone, P.A.*, 223 S.W.3d 398, 405–06 (Tex. App.—Amarillo 2006, no pet.) (holding that

explanation of causation; it must explain the basis of its statements sufficiently to link its conclusions to the facts.[25] The report may only assert that multiple defendants are all negligent if it provides an explanation of how each defendant specifically breached the standard and how each defendant's breach caused or contributed to the cause of injury.[26]

In his report, Dr. Oswalt states that Gloria died from hypovolemic shock on September 22, 2004, due to uncontrolled bleeding after her fall which Dr. Bismar failed to timely treat. His report then describes the standard of care for treating Gloria, how Dr. Bismar's treatment of Gloria fell below this standard of care, and how his breach allegedly caused her death:

---

single standard of care applicable to physicians and physician assistant was sufficient because all participated in administering treatment), *with Polone v. Shearer*, 287 S.W.3d 229, 235 (Tex. App.—Fort Worth 2009, no pet.) (holding report that set forth single standard of care applicable to physician and physician assistant insufficient to represent a good faith effort because "[a]lthough the standards of care might be the same for both [the physician and physician assistant], the report does not specifically state as much").

[25] *Polone*, 287 S.W.3d at 236; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52–53; *Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex. App.—San Antonio 2004, no pet.).

[26] *Polone*, 287 S.W.3d at 233–34; *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.); *see Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.—San Antonio 1999, pet. denied) (stating that report must specifically refer to defendant and discuss how that defendant breached applicable standard of care).

Mrs. Morehead was pronounced dead at 6:15 p.m. on September 22, 2004. She died in the hospital from uncontrolled bleeding which resulted in hypovolemic shock that was left untreated.

As I stated in my January report regarding Drs. Hisham Bismar, McLaughlin and Mike Bismar, all three physicians were involved in the care and treatment of Mrs. Morehead after she injured her arm on September 21, 2004. The standard of care set forth in my initial report applies equally to all three physicians, including Dr. Hisham Bismar and Dr. Mike Bismar. Although most of the records are not specific in identifying "Dr. Bismar," Dr. Mike Bismar has signed several progress notes, including one after his examination of Mrs. Morehead's bleeding arm. Dr. Hisham Bismar is identified several times as the recipient of the progress reports regarding Mrs. Morehead.

After Mrs. Morehead's fall on September 21, 2004, it was apparent from the appearance of her swollen and bleeding arm, from her "red, red bloody urine," from her low hemoglobin and low hematocrit (approaching critical levels), from the very large hematoma that continued to increase in size, from the patient's description of [sic] "weak and confused," from her blood pressure that continued to drop, and from her severe pain (a "10" on a 1-10 scale), all which are symptomatic of internal bleeding, that Mrs. Morehead was hypovolemic. Lovenox, a drug which would exacerbate the patient's condition, was not discontinued until the following day. But most importantly, as stated in my initial report, it is the standard of care for physicians caring for a hospitalized patient who is hemorrhaging to control the bleeding as soon as it is detected. In this case the physicians were aware that Mrs. Morehead was hemorrhaging on September 21, 2004. Abnormal quatting due to the Lovenox should have been corrected at the first sign of bleeding. This correction was not ordered.

As stated in my initial report, the standard of care is to control the patient's bleeding and to treat the hypovolemic shock vigorously with crystalloid and blood transfusions. In cases such as Mrs. Morehead's, shock related to injury and/or hemorrhage is

10

a state of circulatory failure or collapse in which there is insufficient return of blood to the heart, a sharp decrease in the blood pressure of the arteries, and a continuing loss of blood flow to the body tissues and organs. Shock and the associated degree of circulatory collapse may be so profound as to cause death in a situation where the precipitating injury would not, in itself, normally be fatal. Consequently, the standard of care, as set forth in my initial report, is to control the bleeding and to replace the blood lost by hemorrhage with blood transfusions. In most cases, following the standard of care will relieve shock and permit recovery. However, time is of the essence in initiating treatment once the tell-tale signs are recognized. It should go without saying that it is the standard of care for a physician who is treating patients in a hospital setting to be alert for symptoms of hemorrhaging and to take immediate action to control the bleeding while treating vigorously with crystalloid and blood until the hypotension is corrected. Drs. Bismars' failure to do so was a breach of the standard of care which resulted in the death of Gloria Morehead.

Mrs. Morehead had exhibited classic symptoms of hypovolemic shock as early as September 21, 2004. The contusion on her left arm caused by the hemorrhage was severe, as shown in the hospital photographs. Nevertheless, neither Dr. Hisham Bismar nor Dr. Mike Bismar took no [sic] measures to treat Gloria Morehead for hypovolemic shock until she was "found to be unresponsive" in the afternoon of September 22, 2004. Mrs. Morehead, who was declared dead at 6:15 p.m. on September 22, 2004, never received a blood transfusion. She died as a result of hypovolemic shock due to her treating doctors' failure to meet the standard of care.

Dr. Oswalt's report states that Dr. Bismar should have taken "immediate action" to control Gloria's bleeding by treating her hypovolemic shock "vigorously with crystalloid and blood transfusions," but that he failed to do so. According to Dr. Oswalt, this standard applies equally to all three treating

11

physicians, "including . . . Dr. Mike Bismar."[27] Thus, Dr. Oswalt's report states a standard of care for treating internal bleeding and hypovolemic shock—taking "immediate action to control the bleeding while treating vigorously with crystalloid and blood until the hypotension is corrected"—that specifically applies to Dr. Bismar. The report also provides a specific explanation as to how Dr. Bismar breached the standard—failure to take "immediate action" to treat Gloria's hypovolemic shock in accordance with the standard of care set forth in the report.

In addition, the report provides specific information as to causation. The report first states that uncontrolled internal bleeding that results in hypovolemic shock, if not treated immediately, may cause profound circulatory collapse that leads to death. It then specifically states that the failure of Dr. Bismar to take "immediate action" to control Gloria's bleeding or replace her lost blood when he examined her arm on September 22, 2004, caused the hypovolemic shock which led to her death the same day.[28]

---

[27] *See In re Stacy K. Boone*, 223 S.W.3d at 405–06; *Barber*, 2009 WL 3490952, at *10.

[28] *See Polone*, 287 S.W.3d at 233–34; *Taylor*, 169 S.W.3d at 244.

12

Based on the information contained in the four corners of Dr. Oswalt's report, and after giving full consideration to Dr. Bismar's challenges to the report, we conclude that the report discusses the standard of care, breach, and causation with sufficient specificity to inform Dr. Bismar of the conduct the Moreheads have called into question and to provide a basis for the trial court to conclude that the claims have merit.[29] Consequently, we hold that the report represents an objective good faith effort to comply with civil practice and remedies code section 74.351(r)(6)'s definition of an expert report.[30] Therefore, the trial court did not abuse its discretion by denying Dr. Bismar's motion to dismiss. We overrule Dr. Bismar's sole issue on appeal.

## III. CONCLUSION

We affirm the trial court's October 2, 2007, order denying Dr. Mike Bismar's motion to dismiss.

PER CURIAM

PANEL: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED: December 10, 2009

---

[29] ... *See Palacios*, 46 S.W.3d at 875, 878.

[30] ... *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6).

13