**Affirmed and Memorandum Opinion filed February 16, 2012.**



In The

# Fourteenth Court of Appeals

———————————————

## NO. 14-11-00118-CV

———————————————

### ASHISH KAPOOR, M.D., Appellant

### V.

### THE ESTATE OF MARGARET E. KLOVENSKI, JAKE KLOVENSKI, AND MARY HASSLER, INDIVIDUALLY AND AS NEXT FRIENDS, Appellees

**On Appeal from the 113th Judicial District Court
Harris County, Texas
Trial Court Cause No. 2009-31943**

## MEMORANDUM OPINION

This healthcare liability case is governed by chapter 74 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507 (Vernon 2011 & Supp. 2011). Jake Klovenski, individually and on behalf of the Estate of Margaret Klovenski, and Mary Hassler brought wrongful death and survival claims against Dr. Ashish Kapoor asserting that Dr. Kapoor failed to diagnose cancer in Margaret Klovenski. Dr. Kapoor moved to dismiss all claims based on alleged deficiencies in plaintiffs' expert

report.   Dr. Kapoor brought this interlocutory appeal challenging the trial court's order denying the motion to dismiss.   *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008).   We affirm.

## BACKGROUND

The following background is based on allegations in plaintiffs' petition and assertions in the expert report tendered by plaintiffs.   Margaret Klovenski had been the patient of Dr. Kapoor for several years.   On December 12, 2006, she sought medical advice from Dr. Kapoor regarding a swollen and painful lump on her left thigh. According to plaintiffs, Dr. Kapoor ordered x-rays of the leg and a venous Doppler exam; instructed her to take Tylenol for her pain; and assured Ms. Klovenski that she should not worry about the lump.   The following month, Dr. Kapoor ordered an ultrasound of the veins in her leg but not of the lump.   Ms. Klovenski visited Dr. Kapoor five times over three months regarding the growing and increasingly painful lump.   However, Dr. Kapoor allegedly ordered no further testing and told Ms. Klovenski not to worry.

Ms. Klovenski sought a second opinion from her urologist, Dr. Pulin Pandya, on March 20, 2007.   Dr. Pandya examined Ms. Klovenski and immediately determined that she was suffering from a cancerous growth in her left thigh.   Ms. Klovenski was seen later that day by a surgeon, Dr. William Kent Johnson, who ordered an MRI exam and CT scans to verify Dr. Pandya's diagnosis.   Ms. Klovenski was treated for cancer by various physicians at the University of Texas M.D. Anderson Cancer Center in Houston, Texas. She died on June 23, 2007.   Plaintiffs attribute her death to Dr. Kapoor's alleged failure to diagnose the cancer in her leg between December 12, 2006, and March 20, 2007.

Plaintiffs sued Dr. Kapoor on May 20, 2009, and timely submitted an expert report and curriculum vitae prepared by Dr. Julie Graves Moy.   *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).   With regard to her qualifications to opine, Dr. Moy's report stated that she is a "physician specializing in family medicine and emergency medicine."   The report also recited that she is "very familiar with the controlling medical standards involving the

2

diagnosis and detection of diseases such as cancer, the need for early and prompt treatment of diseases such as cancer, and the appropriate treatment of cancer by physicians." With regard to causation, Dr. Moy's report stated:

> Optimal outcomes in the treatment of malignant diseases such as cancer are based on early diagnosis; a thorough understanding of the likely behavior of the malignant disease process; prompt, comprehensive, and aggressive treatment; and frequent and thorough follow-up for the possibility of recurrence and/or metastases.
>
> . . . .
>
> I find Dr. Kapoor's failure to timely diagnose the cancer in the left thigh of his patient Margaret Klovenski over a four month period of time . . . directly resulted in the spread of this cancer beyond therapeutic (surgical, radiation, and chemotheraphy, as provided) control, leading to Mrs. Klovenski's ultimate debilitating and painful death, none of which, it is probable, would have occurred had Dr. Kapoor initially diagnosed the cancer in his patient's leg successfully.

Dr. Kapoor moved to dismiss the case, arguing that the expert report was inadequate because Dr. Moy (1) was unqualified to opine about the cause of Ms. Klovenski's death; (2) offered only vague, speculative, and conclusory causation opinions; and (3) failed to describe applicable standards of care or articulate Dr. Kapoor's breach of those standards. *See id.* § 74.351(b).

After a hearing, the trial court denied the motion and ruled that the expert report fully complied with statutory requirements. Dr. Kapoor appealed from the trial court's order denying his motion to dismiss. *See id.* § 51.014(a)(9); *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007).

On appeal, this court held that the trial court exceeded its discretion in denying Dr. Kapoor's motion to dismiss because: (1) Dr. Moy's report failed to identify any experience or credentials to demonstrate that she is qualified to testify on this particular issue; and (2) Dr. Moy's statements on causation were conclusory. *Kapoor v. Estate of Klovenski*, No. 14-09-00963-CV, 2010 WL 3721866, at *2–5 (Tex. App.—Houston [14th Dist.] 2010, no

3

pet.) (mem. op., not designated for publication). This court reversed and remanded the suit for the trial court's consideration of whether to grant a 30-day extension to remedy the deficiencies in Dr. Moy's report. *See id*. at *5.

On remand, the trial court granted plaintiffs a 30-day extension to amend Dr. Moy's report. Plaintiffs amended the report and served it upon defendant. Among other things, Dr. Moy's amended report recites the following:

- The tumor's characteristics are "highly consistent with a sarcoma such as rhabdomyosarcoma."
- Consistent with the standard of care, this type of cancer should be suspected when a patient has a new growth on an arm or leg.
- Delay in diagnosis can harm a patient by eliminating the opportunity for surgery and other possible treatments. In this case, the delay in diagnosis led to the loss of opportunity to have surgery and chemotherapy.
- The standard of care required Dr. Kapoor to further explore the localized swelling and pain during the first exam in December, 2006.
- A biopsy is the preferred method to diagnose and grade the sarcoma.
- Surgery to remove the tumor with wide margins is the most important part of treatment. Chemotherapy in addition to surgery should be used for patients over 21 years old. Radiation therapy is also be used to improve local control of the cancerous tumor.
- Ms. Klovenski had a small tumor and no symptoms that the cancer had spread when she saw Dr. Kapoor in December 2006.
- By the time Ms. Klovenski was diagnosed in March 2007, the tumor had metastasized and progressed to more than 10 centimeters by 15 centimeters. The survival rate for an adult with rhabdomyosarcoma is zero percent at this large tumor size.

4

- This tumor grows very fast compared to other cancers; thus, diagnosis at the very beginning is the difference between life and death. Ms. Kovenski died because Dr. Kapoor did not diagnose this tumor when she first showed him the swelling in her leg in December 2006.

- In reasonable medical probability, Ms. Klovenski did not have wide-spread cancer when she first saw Dr. Kapoor. Had Ms. Klovenski obtained the proper tests when she first sought Dr. Kapoor's help, her diagnosis of cancer would have been made in a timely fashion and Ms. Klovenski would have lived years longer.

- A reasonably prudent physician would have performed a biopsy, ordered an ultrasound of the mass, and/or referred Mrs. Klovinski immediately to a competent surgeon. Dr. Kapoor's failure to take any of these actions led to Mrs. Klovinski's untimely death.

Dr. Kapoor again moved to dismiss the case, arguing that the expert report is inadequate because Dr. Moy (1) is unqualified to opine about the cause of Ms. Klovenski's death; (2) failed to establish that Ms. Klovenski would have had more than a 50 percent chance of survival; and (3) offered only vague, speculative, and conclusory causation opinions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

After a hearing, the trial court denied the motion and ruled that the expert report fully complied with statutory requirements. Dr. Kapoor again appeals the trial court's order denying his motion to dismiss. *See id.* § 51.014(a)(9); *Ogletree*, 262 S.W.3d at 319.

## ANALYSIS

### I. Applicable Law and Standard of Review

A trial court must grant a defendant's motion to dismiss a healthcare liability suit with prejudice unless the plaintiff serves a timely expert report within 120 days of filing the original petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b). To qualify as

5

timely, the report must represent a good faith effort to comply with the statutory requirements for an expert report. *See id*. § 74.351(l).

An expert report is defined as a written report by an expert that provides a fair summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See id*. § 74.351(r)(6); *see also Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). An expert report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *See Palacios*, 46 S.W.3d at 878; *Kelly v. Rendon*, 255 S.W.3d 665, 672 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The plaintiff is not required to present evidence in the report as if it were actually litigating the merits at this preliminary stage of the lawsuit. *Palacios*, 46 S.W.3d at 879. Instead, the report must provide only enough information to: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Id*.

We review a trial court's denial of a motion to dismiss under section 74.351(b) for abuse of discretion. *Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 878); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). To determine whether the trial court abused its discretion, we must decide whether the trial court acted in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Wright*, 79 S.W.3d at 52; *see also Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). In making such a determination, a court of appeals may not substitute its own judgment for the trial court's judgment. *Wright*, 79 S.W.3d at 52.

## II.    Dr. Moy's Qualifications

An expert first must establish that she is qualified to provide a report addressing accepted standards of care, causation, or both. *See* Tex. Civ. Prac. & Rem. Code Ann. §

6

74.351(r)(5)(A), (C).   Qualifications must appear in the expert report and cannot be inferred.  *See Olveda v. Sepulveda*, 141 S.W.3d 679, 683 (Tex. App.—San Antonio 2004, pet. denied); *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex. App.—Dallas 2003, pet. denied). Accordingly, analysis of expert qualifications under section 74.351 is limited to the four corners of the expert's report and curriculum vitae.  *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Palacios*, 46 S.W.3d at 878).[1]

To qualify as an expert capable of providing opinion testimony regarding causation in a healthcare liability claim against a physician, an expert must satisfy section 74.403. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C); *Thomas v. Alford*, 230 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2007, no pet.).   Section 74.403 states in pertinent part:

> [A] person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a).

When a physician's failure to diagnose is alleged to have harmed a patient, an expert testifying as to causation must be qualified to opine about the effect of a timely diagnosis and treatment on the outcome.  *See Broders*, 924 S.W.2d at 153 (emergency physician was qualified to testify at trial that the standard of care required diagnosis of head injury

---

[1] Dr. Kapoor attached to his appellate brief a copy of the "Curriculum Vitae of Julie Graves Moy, M.D. current through December 10, 2010."  Because this amended curriculum vitae is not part of the appellate record it will not be considered in the disposition of this appeal.  *See Beck v. Walker*, 154 S.W.3d 895, 899 n.2 (Tex. App.—Dallas 2005, no pet.) ("The attachment of a document as an exhibit or appendix to a brief is not formal inclusion in the record on appeal and, thus, the document cannot be considered."); *see also* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); *Sabine Offshore Serv., Inc v. Cty of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (per curiam) (stating matters outside of the record cannot be considered by appellate court for any purpose other than determining its own jurisdiction).  Instead, we review only the amended expert report and the original curriculum vitae contained in the appellate record.

and referral of patient for neurological treatment, but not as to potential effectiveness of proposed treatments for the undiagnosed neurological condition); *Thomas*, 230 S.W.3d at 859–60 (radiologist was not qualified to offer expert opinion addressing whether delayed cancer diagnosis affected patient's prognosis); *cf. Mosely v. Mundine*, 249 S.W.3d 775, 779–80 (Tex. App.—Dallas 2008, no pet.) (emergency room physician was qualified to opine because proffered expert opinion "related to the ability of an emergency room physician to interpret a routine chest x-ray . . . not the diagnosis and treatment for cancer"). Qualifications may be demonstrated by prior experience treating similar patients suffering from the undiagnosed condition at issue. *See, e.g.*, *Estorque v. Schafer*, 302 S.W.3d 19, 26–27 (Tex. App.—Fort Worth 2009, no pet.) (expert was qualified to opine that failure to refer patient for evaluation of ovarian mass caused loss of kidney function because he had treated patients with similar conditions; was familiar with complications arising from the condition in such patients; and had observed those caring for and treating similar patients).

In our previous opinion, we found Dr. Moy's report inadequate to establish her qualifications to opine about whether the alleged delay in diagnosis affected Mrs. Klovenski's outcome. Specifically, we stated:

> Dr. Moy's report states that she is a "physician specializing in family medicine and emergency medicine." The report states that she is "very familiar with the controlling medical standards involving the diagnosis and detection of diseases such as cancer, the need for early and prompt treatment of diseases such as cancer, and the appropriate treatment of cancer by physicians." However, Dr. Moy identified no experience or credentials to demonstrate that she is qualified to testify about (1) what treatments would have been available to Ms. Klovenski had Dr. Kapoor diagnosed her cancer three months earlier; and (2) whether earlier administration of potential treatments would have resulted in a more favorable prognosis. On this record, we conclude that the trial court acted beyond its discretion in concluding that Dr. Moy meets the statutory qualifications to opine about whether the asserted delay in diagnosis of Ms. Klovenski's cancer affected her outcome.

*Kapoor*, 2010 WL 3721866, at *3.

8

Dr. Kapoor argues in this second appeal that Dr. Moy is not qualified to opine in this case because she has not detailed her experience with this particular form of cancer or the treatment of this particular cancer, as opposed to cancer in general. Dr. Kapoor relies on *Broders* and this court's opinion in *Thomas* to support his contentions. *See Broders*, 924 S.W.2d at 152–53; *Thomas*, 230 S.W.3d at 860.

In *Broders*, a woman died from head trauma she suffered in an assault. 924 S.W.2d at 150. The woman's parents brought a wrongful death claim against the hospital and the three emergency room doctors that treated her. *Id.* The parents alleged that the doctors were negligent in failing to promptly diagnose and treat their daughter's head injuries, and this negligence was the proximate cause of her death. *Id.* The doctors alleged that even if they had not been negligent, the decedent would not have survived her injuries. *Id.*

At trial, the parents called an emergency room doctor to testify about the standard of care, breach of that standard, and causation. *Id.* The trial court found the expert qualified to testify to the standard of care and its breach, but found the expert unqualified to testify about causation. *Id.* at 150–51. The parents argued that the expert was qualified because he was trained in the brain and its function, had experience in treating head injuries, and understood what services a neurosurgeon could provide in order to know what type of physician to recommend. *Id.* at 150.

The supreme court held that the trial court acted within its discretion in finding the expert to be unqualified. *Id.* at 154. The supreme court stated that "[w]hile he knew both that neurosurgeons should be called to treat head injuries and what treatments they could provide, he never testified that he knew, from either experience or study, the effectiveness of those treatments in general, let alone in this case." *Id.* at 153.

In *Thomas,* the plaintiffs alleged that several doctors failed to diagnose cancer until after it was incurable. *Thomas,* 230 S.W.3d at 856. After filing their expert reports, the trial court dismissed their claims and the plaintiffs appealed. *Id.* at 855. One of the experts, a

9

diagnostic radiologist, submitted a report stating that the American College of Radiology Guidelines recommended direct communication regarding an unexpected finding; that faxing the report did not fulfill the recommendation; that the defendant radiologist did not meet that standard; and that his failure to directly communicate the unexpected findings contributed to the delay in the patient's diagnosis. *Id.* at 859. In affirming the trial court's order dismissing the case against the radiologist, the appellate court noted that the report did not state whether the guidelines expressed the standard of care for any ordinarily prudent radiologist or were merely aspirational; did not state whether the guideline actually required telephone communication; and assumed that the faxed report did not come to the attention of the recipient. *Id.* at 859–60. Lastly, the appellate court noted that the report failed to show that the radiologist had knowledge, training, or experience in cancer treatment that would qualify him to express an opinion on the likelihood that an earlier diagnosis would have produced a better outcome. *Id.* at 860.

Contrary to Dr. Kapoor's argument, *Broders* and *Thomas* do not require Dr. Moy to be a specialist in this type of cancer to be qualified to testify as to causation. *See Broders*, 924 S.W.2d at 153 ("Our holding does not mean that only a neurosurgeon can testify about the cause in fact of death from an injury to the brain, or even that an emergency room physician could never so testify."). As we stated in our previous opinion, the expert must be able to testify about the effect of a timely diagnosis and treatment on the outcome. *Kapoor*, 2010 WL 3721866, at *3. We further stated that such qualifications could be demonstrated by prior experience treating similar patients suffering from the undiagnosed condition at issue. *Id*.; *see also Estorque*, 302 S.W.3d at 26–27.

Dr. Moy's amended report identifies experience and credentials showing that she is qualified based on her knowledge and experience regarding the diagnosis and treatment of cancer. Instead of merely stating, as she did in her initial report, that she is "very familiar with the controlling medical standards involving the diagnosis and detection of diseases such as cancer, the need for early and prompt treatment of diseases such as cancer, and the

10

appropriate treatment of cancer by physicians," Dr. Moy's amended report specifically states her experience in the field of cancer treatment and diagnosis. Dr. Moy's amended report states:

> [A]s a practicing medical doctor and as a faculty physician with Baylor College of Medicine, with the University of Texas Medical School at Houston, with the Texas A&M family medicine residency program in Bryan, Texas, and with the Austin Medical Education Programs, I have cared for and supervised care for over 500 patients who have been diagnosed with and treated for cancer.

The amended report further states that in addition to the above referenced patients, she has "diagnosed cancer and [has] provided and supervised medical care in collaboration with cancer specialists . . . to over 100 other patients, in [her] estimation." Finally, she adds that she has "reviewed over 500 medical records kept by internal medicine and family medicine physicians regarding diagnosis and treatment of patients with cancer in [her] work as a chart monitor"

Based on this information, the trial court acted within its discretion in concluding that Dr. Moy sufficiently demonstrated her qualifications to opine in this case. *See Vicento*, 164 S.W.3d at 727; *Wright*, 79 S.W.3d at 52; *see also Estorque*, 302 S.W.3d at 26–27. Dr. Kapoor's first issue is overruled.

### III. Dr. Moy's Causation Opinion

In providing an expert report on causation, a claimant must offer more than a general opinion that timely diagnosis and treatment would have led to "the possibility of a better outcome." *Wright*, 79 S.W.3d at 52–53. The expert must explain the basis of her statements and link her conclusion to the facts. *Id*. at 52.

In a failure-to-diagnose case, the expert report must explain how the complained-of harm would not have occurred if the diagnosis had been made in a timely fashion. *See, e.g., Foster v. Richardson*, 303 S.W.3d 833, 842 (Tex. App.—Fort Worth 2009, no pet.) (report insufficient because it failed to explain how delay in diagnosing six-month-old

11

ankle injury caused more exhaustive care than if injury had been diagnosed a month earlier); *Craig v. Dearbonne*, 259 S.W.3d 308, 312–13 (Tex. App.—Beaumont 2008, no pet.) (report insufficient because expert stated only that plaintiff "more likely than not" could have been "successfully treated and would not have died when she did" if lung condition had been diagnosed sooner); *Jones v. King*, 255 S.W.3d 156, 159–60 (Tex. App.—San Antonio 2008, pet. denied) (mem. op.) (report insufficient because expert failed to explain how diagnosis of meningitis 48 hours earlier would have prevented injuries).

In similar healthcare liability cases predicated on the progression of undiagnosed and untreated cancer, courts have scrutinized reports to determine whether they contain information regarding (1) the effect of cancer development over time on the patient's prognosis; and (2) the potential effectiveness of treatments for the patient's type of cancer. *See, e.g.*, *Thomas*, 230 S.W.3d at 858–59 (oncologist's report sufficient because it explained that 47-month delay in diagnosis meant that surgically resectable and curable stage I nodule in liver developed into a stage IV "metastatic well-differentiated adenocarcinoma," which was completely untreatable); *see also Polone v. Shearer*, 287 S.W.3d 229, 236–37 (Tex. App.—Fort Worth 2009, no pet.) (reports sufficiently explained that 22-month delay in diagnosis increased risk of metastatic breast cancer, morbidity, and mortality; prompt diagnosis would have led to treatment that obviated need for mastectomy); *House v. Jones*, 275 S.W.3d 926, 932–33 (Tex. App.—Dallas 2009, pet. denied) (report sufficient because it explained that positive response to belated treatment supported opinion that earlier treatment following prompt diagnosis would have cured patient); *Mosely*, 249 S.W.3d at 780–81 (report sufficient because expert explained that undiagnosed cancerous nodule in lung grew 5cm, requiring more invasive treatment with lower chance of success); *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 179–181 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (report sufficient because it explained that "possibly" malignant breast mass developed into "advanced disease . . . with metastasis"

12

that could have been prevented if not for delay in communication of diagnosis and treatment).

In our previous opinion, we concluded Dr. Moy's causation opinions were conclusory. Specifically, we stated:

> In her report, Dr. Moy failed to connect her conclusion to any specific facts regarding whether Ms. Klovenski's type of cancer was treatable, either before or after its eventual diagnosis. Dr. Moy did not state what kind of cancer was diagnosed in Ms. Klovenski's leg. Based on Dr. Moy's general knowledge about "the need for early and prompt treatment of diseases such as cancer, and the appropriate treatment of cancer," she summarily concluded that the delay in diagnosis between December 2006 and March 2007 resulted in the general "spread" of the cancer beyond therapeutic control and caused Ms. Klovenski's death six months after her first visit to Dr. Kapoor.

*Kapoor*, 2010 WL 3721866, at *5.

In contrast to her original report, Dr. Moy's amended report states that the tumor at issue had characteristics that are "highly consistent with a sarcoma such as rhabdomyosarcoma," and that the occurrence of this type of cancer is rare. Dr. Moy's report indicates that rhabdomyosarcoma is difficult to distinguish from other soft tissue sarcomas. She states that the National Cancer Institute recommends the same testing and procedures for diagnosing soft tissue sarcomas generally. Further, Dr. Moy's report discusses the treatment of rhabdomyosarcoma specifically. She references an American Cancer Society study that reported "surgery to remove the tumor with wide margins is the most important part of treatment." Chemotherapy in addition to surgery is recommended for patients over 21 years of age. Finally, "[r]adiation therapy is also … used to improve local control of the cancerous tumor."

Dr. Kapoor argues that Dr. Moy's amended report likewise fails to sufficiently address causation. Dr. Kapoor states that, "[w]ith respect to causation, [Dr. Moy] has concluded that with earlier diagnosis [Ms.] Klovenski had a one in three . . . chance of survival." Dr. Kapoor argues that the report fails to establish that Ms. Klovenski had a

13

greater than 50 percent chance of survival had she been diagnosed in her first visit to Dr. Kapoor. Because Texas does not recognize a cause of action for the loss of chance of survival, Dr. Kapoor contends that Dr. Moy cannot establish causation. Additionally, Dr. Kapoor contends that Dr. Moy's causation opinions are vague, speculative, and conclusory.

Texas does not recognize a cause of action for the loss of chance of survival. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993). Dr. Moy's amended report states:

> Regarding rhabdomyosarcoma specifically, a 2000 study by the American Cancer Society of eighty-four (84) adult patients with a pathologic diagnosis of rhabdomyosarcoma indicated that the median disease specific survival was 22 (twenty-two) months. This means that one-half of the patients lived longer than 22 months and one-half of the patients lived less than 22 months.
>
> . . . .
>
> In adults, the 5-year rate survival for this type of cancer is approximately 30%. This means that 30 percent (about one in three) of people who have this cancer are alive in five years. The five-year survival rate for patients with tumors less than 5 centimeters is 60%. For tumors of 5 to 10 centimeters, it is 14%, and for over 10 centimeters, it is 0%. Adult patients who have only localized disease when they first see the doctor have a 44% 5-year survival rate, but there are no survivors among patients who have metastatic disease (cancer that has already spread) when they are diagnosed. The type of cancer that Mrs. Klovenski had is a type of cancer that spreads more rapidly after the first tumor has grown larger than five centimeters.

The statistics referenced do not conclusively establish or negate proximate cause. Instead, the statistics in the report illustrate the probability of survival of any given patient with this form of cancer at its various stages of progression.

To succeed in their suit, appellees ultimately must adduce evidence of a reasonable medical probability that the claimed injury was proximately caused by the appellant's

negligence. *See Park Place Hosp.*, 909 S.W.2d at 511. In other words, it must be determined whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm, and without which the harm would not have occurred. *Id.* However, at this stage of the proceedings, appellees need only present an expert report that represents a good-faith effort to provide a fair summary of the expert's opinions. *See Palacios*, 46 S.W.3d at 878. The evidence in the report need not meet the same requirements as evidence offered in a summary judgment proceeding or at trial. *See id.* at 878–79; *Thomas*, 230 S.W.3d at 856; *Polone*, 287 S.W.3d at 237. The purpose of filing the expert report at this preliminary stage of the litigation is to determine whether the claims asserted have any merit, and to inform the defendant of the conduct called into question. *Palacios*, 46 S.W.3d at 879. The report need not marshal all of the appellees' proof because the merits of the case are not actually being litigated at this point. *See id.* at 878–89.

Dr. Moy's report must explain how the complained-of harm would not have occurred if the diagnosis had been made. *See Foster*, 303 S.W.3d at 842. In her report, Dr. Moy states that Ms. Klovenski had a small tumor and no symptoms that the cancer had spread at her first appointment with Dr. Kapoor. She goes on to detail that over the course of her visits with Dr. Kapoor, the pain and swelling in Ms. Klovenski's leg increased, but Dr. Kapoor did not order further testing or consultations consistent with the standard of care. Dr. Moy states that this cancer "spreads more rapidly" after the first tumor is larger than five centimeters. Dr. Moy then opines that such a delay in diagnosis led to the loss of opportunity for Ms. Klovenski to have surgery or chemotherapy because the cancer had metastasized by the time it was diagnosed. Finally, Dr. Moy states that the five-year survival rate for a tumor less than five centimeters when discovered is 60 percent. However, there are no recorded survivors once the cancer has metastasized.

15

The report must provide information regarding both the effect of cancer development over time on the patient's prognosis, and the potential effectiveness of treatments for the patient's type of cancer. *See Thomas*, 230 S.W.3d at 858–59. Dr. Moy's amended report specifically details the effect of cancer development over time on the patient's prognosis. The report states that this type of cancer spreads more rapidly after the first tumor is larger than five centimeters. Further, she details the probability of survival at various tumor sizes, and stages of progression, for this particular cancer. Dr. Moy also includes a discussion of the potential effectiveness of treatment for the patient's type of cancer. She states that surgery to remove the tumor is the most important aspect of treatment. In addition to surgery, chemotherapy and radiation therapy may also be used to control the tumor. Further, Dr. Moy states that the "delay in diagnosis led to the loss of opportunity for Ms. Klovenski to have surgery and chemotherapy that would have, in reasonable medical probability, led to her living considerably longer." By the time the cancer was diagnosed, it had metastasized. Dr. Moy states that the survival rate is zero percent for patients with this type of metastatic cancer. The survival rate is 60 percent for a patient with a tumor of five centimeters or fewer.

Based on the information presented in the amended expert report, we conclude that the trial court acted within its discretion in concluding the amended report constituted a good-faith effort to inform Dr. Kapoor of the specific conduct the plaintiffs have called into question and that the report provides a basis for the trial court to conclude that the claims can go forward. *See Palacios*, 46 S.W.3d at 879; *Polone*, 287 S.W.3d at 237; *Garrett*, 232 S.W.3d at 181; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Dr. Kapoor's second issue is overruled.

16

## CONCLUSION

Having overruled both of Dr. Kapoor's issues, we affirm the trial court's order.


/s/     Justice William J. Boyce


Panel consists of Chief Justice Hedges and Justices Boyce and Christopher.