# NO. 12-22-00188-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TYLER OPS LTC., INC., D/B/A PETAL HILL NURSING & REHABILITATION, APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CORNELIUS BUTLER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BETTY BUTLER, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Tyler OPS LTC., Inc., d/b/a Petal Hill Nursing & Rehabilitation appeals the trial court's denial of its motion to dismiss Cornelius Butler's suit against it. We reverse and remand for further proceedings.

### BACKGROUND

Betty Butler had a history of falls and suffered from dementia, type 2 diabetes, and hypertension. Around 2017, she became a resident at Petal Hill Nursing and Rehabilitation. During at least part of Betty's time there, Tyler OPS managed the facility. On February 28, 2019, a pressure wound[1] was found on Betty's left buttock. On September 12, 2020, Betty was admitted to the hospital for a metabolic crisis, respiratory failure, and sepsis. On admission, she was found to have pain of the right upper extremity resulting from ischemia,[2] gangrene of the

---

[1] Commonly called a bedsore.

[2] Ischemia is a "deficient supply of blood to a body part (as the heart or brain) that is due to obstruction of the inflow of arterial blood." Merriam-Webster's Collegiate Dictionary 663 (11th ed. 2011).

fingers, and a degloving wound of the right hand. Amputation of the hand was indicated, but she was not a candidate because of her severe anemia. Betty was intubated and placed on vent support. She developed another pressure wound on the coccyx and passed away on October 2, 2020.

Butler filed the instant lawsuit against Tyler OPS alleging its staff breached its duty of care to Betty resulting in her exposure to COVID-19, pneumonia, and gangrene in her hand. In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Butler served on Tyler OPS an expert report and curriculum vitae by Dr. F.E. Saba. Tyler OPS filed objections to Dr. Saba's report, including objections that (1) the report describes claims that are unpleaded and occurred at times when Tyler OPS was not Betty's care provider, (2) Dr. Saba did not establish that he is qualified to render a causation opinion regarding Betty's hand, and (3) Dr. Saba's causation opinions are deficient. Tyler OPS further filed a motion to dismiss Butler's claim. The trial court overruled the objections and denied the motion to dismiss. This appeal followed.

## EXPERT REPORT

In a single issue, Tyler OPS contends that the trial court erred by overruling its objections to Dr. Saba's report and denying its motion to dismiss because (1) Dr. Saba's causation opinion regarding Betty's hand is deficient, (2) Dr. Saba is not qualified to offer such a causation opinion, and (3) Dr. Saba's opinions about pressure wounds are conclusory, do not concern a time when Betty was in Tyler OPS's care, and do not correspond to any pleaded liability theory.

### Standard of Review

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). The court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). In exercising its discretion, the court must review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrates a good faith effort to show that the plaintiff's claims have merit. *See Van Ness*, 461 S.W.3d at 144. When reviewing factual matters committed to the trial court's discretion, an

2

appellate court may not substitute its judgment for that of the trial court. ***Head v. Hagan***, 600 S.W.3d 375, 378-79 (Tex. App.—Tyler 2019, no pet.).

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2022). The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. ***Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 631 (Tex. 2013). An expert report is

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2022). "A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*) (West Supp. 2022). To constitute a good faith effort, the report must (1) inform the defendant of the specific conduct the plaintiff challenges and (2) provide a basis for the court to conclude that the claims have merit. ***Palacios***, 46 S.W.3d at 879. All information needed for this inquiry is found within the four corners of the report. ***Jelinek***, 328 S.W.3d at 539. The report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, nor does it require litigation ready evidence. ***Potts***, 392 S.W.3d at 630-31. For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct. *Id.* at 631. If the court decides that an alleged liability theory is supported, then the claim is not frivolous, and the suit may proceed. *Id.*

**Causation**

Tyler OPS argues that Dr. Saba's report fails to meet the expert report requirement because it does not adequately address the three elements as to any pleaded theory of liability. Tyler OPS notes that Butler pleaded theories of liability related to COVID-19, dehydration, lung infection, and a hand wound that developed gangrene, but among these conditions, the report addresses only the injury to her hand. Although Dr. Saba's report additionally addresses a theory

of liability related to Betty's pressure ulcers,[3] we do not consider this unpleaded theory in our analysis. *See id.* at 632 (report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements). Regarding the hand injury, Tyler OPS contends that Dr. Saba's causation opinion is conclusory and, therefore, deficient. We agree.

An expert cannot simply opine in the report that a particular breach caused the alleged injury. *Jelinek*, 328 S.W.3d at 539. Instead, he must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented. *Id.* at 539-40. In showing how and why the breach caused the injury, the report must make a good faith effort to factually explain how proximate cause will be proved. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. *Id.* To constitute a cause-in-fact of the harm, a negligent act or omission must have been a substantial factor in bringing about the harm, which would not have occurred without the act or omission. *Id.* A report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements. *Potts*, 392 S.W.3d at 632.

Dr. Saba's report states the following regarding Betty's hand injury:

> The standard of care requires that nursing staff perform skin checks daily to monitor progression of wounds and for early detection of infection or necrosis. In the present case, Ms. Butler developed necrosis to the hand. Nursing staff are required to monitor IV sites to ensure that they are patent and that the skin and circulation to the area is not compromised. Nursing staff of Petal Hill failed to do so. On admission to Christus, Ms. Butler was shown to have right hand with no radial and ulnar pulse and the hand was shown to be completely black. While it is beyond the scope of practice of nursing staff to diagnose PVD or a vessel occlusion that could cause ischemia and lead to gangrene of the right hand, it is well within nursing practice to perform assessment, including assessment of pulses to the extremity. Additionally, a hand developing ischemia and cyanosis, as identified when Ms. Butler was admitted to Christus, is something that nursing staff could and should have identified and reported to Ms. Butler's physician. They failed to do so. In fact, on 9/12/2020, nursing staff were still simply flushing the IV to Ms. Butler's dorsal hand, without assessing the area to determine adequate circulation and skin integrity.
>
> This led to Ms. Butler developing a necrotic wound to her hand which was a contributing factor to her death.
>
> The failures set out above by nursing staff led to Ms. Butler suffering . . . a necrotic wound to her hand. [This] led to her pain and suffering and contributed to her death.
>
> . . . .

---

[3] We note that Dr. Saba's report indicates the second pressure wound occurred while Betty was in the hospital and not under Tyler OPS's care, and Tyler OPS asserts that the first pressure wound occurred before it began managing Petal Hill.

4

It is my opinion that the events and failures set forth in this report proximately caused Ms. Butler's injuries and led to her pain and suffering and contributed to her death.

Nursing staff of Petal Hill failed to inspect skin daily to Ms. Butler's hand to ensure that there was no developing infection. They failed to ensure skin integrity and failed to assess Ms. Butler's right hand when they were flushing her IV. Nursing staff failed to recognize ischemia developing when they could and should have recognized this and reported it to Ms. Butler's physician in order for her to be sent to a higher level of care. Ms. Butler developed gangrene to the right hand which went unchecked. This infection led to a decrease in Ms. Butler's immunity, and resulted in chronic inflammation, making Ms. Butler more susceptible to illness and decreasing her ability to recover from infectious disease. It also led Ms. Butler to become deconditioned and contributed to her death.

Due to Defendants' failures above stated, Ms. Butler [sic] pressure wounds to the left buttock, as well as necrosis to the right hand. The failures of nursing staff at Petal Hill led to Ms. Butler suffering pain, suffering and increased debility that decreased her ability to recover from illness and contributed to her death.

Tyler OPS observes that the report does not explain how or why the alleged breach— failure to notice and report developing ischemia—caused the hand injury nor how or why the hand injury would have been prevented had the nursing staff sooner identified the developing ischemia and transferred Betty to a higher level of care. Tyler OPS further observes that Dr. Saba attributes the ischemia in Betty's hand to "PVD" or a "vessel occlusion" but fails to specify when the occlusion and ischemia developed and when, if ever, a transfer to a higher level of care could have prevented further injury. Additionally, Tyler OPS notes that Dr. Saba fails to identify any treatment for PVD, vessel occlusion, ischemia, or gangrene that would have been successful had Betty been transferred sooner. Tyler OPS ultimately concludes, as do we, that Dr. Saba's report provides no basis to conclude its breach caused the injury, rather than the natural course of Betty's underlying medical condition. Because Dr. Saba simply opines that the nursing staff's failure to identify and report developing ischemia and cyanosis in the hand led to the development of a necrotic wound and contributed to her death, without explaining the treatments that were available if the issue were reported sooner and their potential effectiveness in Betty, we conclude that his opinion on causation is deficient. *See **Jelinek***, 328 S.W.3d at 539-40; ***Zamarripa***, 526 S.W.3d at 460.

**Qualification**

Tyler OPS does not dispute Dr. Saba's qualification to opine on the applicable standard of care in this case or Tyler OPS's breach thereof. Rather, Tyler OPS argues only that Dr. Saba is not qualified to offer causation opinions concerning Betty's hand. We agree.

5

A person may qualify as an expert witness on the causation element in a health care liability claim only if he is a physician and otherwise qualified to render such causation opinions under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(C), 74.403(a) (West 2017). Under the Texas Rules of Evidence, an expert may be qualified to give a causation opinion on a particular subject if the person has knowledge, skill, experience, training, or education regarding the specific issue before the court. TEX. R. EVID. 702; *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). To qualify to give a causation opinion when the harm is allegedly caused by delayed treatment, an expert must have knowledge regarding the effectiveness of the treatments. *See Broders*, 924 S.W.2d at 153; *Thomas v. Alford*, 230 S.W.3d 853, 860 (Tex. App.—Houston [14th Dist.] 2007, no pet.). An expert's qualifications must appear within the four corners of the expert report or its accompanying curriculum vitae. *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Dr. Saba's curriculum vitae shows that he is a practicing physician for a multi-specialty health care group and is board certified in internal medicine. He is a medical director of multiple skilled nursing facilities and has served in various capacities at numerous acute short-term hospitals, long-term acute care hospitals, corporation facilities, acute rehabilitation hospitals, assisted living facilities, retirement communities, and a psychiatric hospital. Dr. Saba also has extensive drug research experience.

In Dr. Saba's report, he indicates he has "extensive knowledge and experience in the injuries complained of and that were suffered by Ms. Butler." He has "written orders for . . . the duties involved in identifying when residents need to be sent to a higher level of care, including when to apprise physicians of resident change in condition." Dr. Saba is "familiar with the duties and interventions used in the prevention of . . . skin breakdown and infection."

Nothing in Dr. Saba's curriculum vitae or expert report indicates that he is qualified to opine on the issue of whether the nursing staff's failure to notice and report ischemia and cyanosis in Betty's hand caused the necrotic wound and contributed to her death. Although he is familiar with the "interventions used in the prevention of skin breakdown and infection," he does not claim to have knowledge, skill, experience, training, or education regarding the effectiveness of treatment for ischemia such as that in this case. Accordingly, we conclude that the report and curriculum vitae fail to show that Dr. Saba is qualified to give a causation opinion regarding the hand injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(C), 74.403(a); TEX. R.

EVID. 702; **Broders**, 924 S.W.2d at 153; **Thomas**, 230 S.W.3d at 860; **Cornejo**, 446 S.W.3d at 121.

## Summation

Because the only pleaded liability theory addressed in Dr. Saba's expert report is that of the hand injury, and Dr. Saba's expert report and curriculum vitae fail to provide a sufficient causation opinion regarding the hand injury or show he is qualified to render such an opinion, we conclude the report and curriculum vitae provide no basis for the trial court to conclude that any pleaded liability theory has merit. *See **Potts***, 392 S.W.3d at 632; **Palacios**, 46 S.W.3d at 879. Accordingly, we hold that the trial court abused its discretion by overruling Tyler OPS's objections to the report. We sustain Tyler OPS's sole issue.

## Opportunity to Cure

Chapter 74 allows the trial court to grant one thirty-day extension to cure a deficiency in an expert report, and a court must grant an extension if the report's deficiencies are curable. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *see **Scoresby v. Santillan***, 346 S.W.3d 546, 556-577 (Tex. 2011). In response to Tyler OPS's objections, Butler requested the opportunity to cure any deficiencies. The report at issue is not so deficient to constitute no report at all, and Butler is entitled to an opportunity to cure the deficiency. *See **Courtney v. Pennington***, No. 05-16-01124-CV, 2017 WL 3097664, at *4 (Tex. App.—Dallas July 21, 2017, pet. denied) (mem. op.). Therefore, we remand for the trial court to consider granting a thirty-day extension of time to allow Butler to attempt to cure the deficiencies.

### DISPOSITION

Having sustained Tyler OPS's sole issue, we ***reverse*** the trial court's order overruling Tyler OPS's objections to Dr. Saba's report and ***remand*** the case to the trial court to consider whether to grant a thirty-day extension of time to allow Butler to attempt to cure the deficiencies in the report.

BRIAN HOYLE
Justice

Opinion delivered January 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 31, 2023**

**NO. 12-22-00188-CV**

**TYLER OPS LTC., INC., D/B/A
PETAL HILL NURSING & REHABILITATION,**
Appellant
V.
**CORNELIUS BUTLER, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF BETTY BUTLER,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 21-1988-C)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this Court; all costs of this appeal are adjudged against Appellee, **CORNELIUS BUTLER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BETTY BUTLER**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*